United States District Court
Southern District of Texas
**ENTERED**
December 01, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARY GUAJARDO, *et al.*, § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | CIVIL ACTION H-10-2024 |
| § | |
| FREDDIE RECORDS, INC., *et al.,* § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

The only remaining plaintiff in this case is Arnold Martinez. Plaintiff's remaining claims against Freddie Martinez, Sr., d/b/a Marfre Music Publishing are limited to (1) a breach of contract claim, where plaintiff seeks damages and/or rescission of the May 8, 2008 publishing contract, and (2) a claim for declaratory judgment regarding ownership of the song *No Temas Al Amor*. All other claims have been dismissed.

The court conducted a bench trial beginning on September 28, 2015, and ending on September 29, 2015. Based on the trial testimony, admitted exhibits, the arguments of counsel, the pleadings, other relevant documents in the record, and the applicable law, the court makes the following findings of fact and conclusions of law.

**I. FINDINGS OF FACT[1]**

1. Plaintiff Arnold Martinez ("Plaintiff") is a Tejano songwriter. Plaintiff's parents, Gilbert Martinez and Enriqueta "Katy" Martinez, were also Tejano songwriters who authored

---

[1]To the extent any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and to the extent any Conclusion of Law reflects a factual finding, it shall to that extent be deemed a Finding of Fact.

numerous compositions. Gilbert Martinez entered into an exclusive composer's contract with defendant Freddie Martinez, Sr. in 1982.

2. Marfre Music Publishing Company ("Marfre") is a music publishing company which predominantly distributes and releases Tejano Music and Norteno Music. Freddie Martinez, Sr. started the company in 1969. At the time Plaintiff brought the causes of action in this suit, the assets of Marfre had been transferred to Marfre, LLC. Freddie Sr.'s sons, John Martinez, Freddie Martinez, Jr., and Marc Martinez, own and operate Marfre, LLC and all other related companies including Martzcom Music, LLC. Trial Tr. 146-47.

3. Plaintiff entered into publishing contracts with Marfre in connection with two of his songs, *En Las Alas de un Angel* and *No Temas Al Amor*. Trial Tr. 251-52. In Plaintiff's deposition, he testified that in 1997 he and Marfre entered into a publishing contract whereby he transferred his rights in *En Las Alas de un Angel* to Marfre. Pl.'s Dep. 62:1-2.

4. On May 8, 2008, Plaintiff and Marfre entered into a publishing contract ("the 2008 contract") whereby Plaintiff transferred his rights in the song *No Temas Al Amor* to Marfre. Pl.'s Ex. 4. In 1983, Plaintiff authored the original music and lyrics for *No Temas Al Amor*. Plaintiff's breach of contract claim relates solely to the 2008 contract.

**Formation of the 2008 Contract**

5. JoAnn Hobbs is the bookkeeper for Marfre and is responsible for accounts receivable and accounting. Ms. Hobbs has been an employee at Freddie Records and its other related companies (including Marfre) for approximately twenty (20) years. Trial Tr. 249:3.

6. Ms. Hobbs prepared the 2008 contract based on John Martinez's instructions. On May 8, 2008, Ms. Hobbs faxed a copy of the contract to Plaintiff at his wife's place of

employment. *Id*. at 258:21-259:10. Within the next few hours, Plaintiff signed the last page of the seven (7) page contract and faxed it back to Ms. Hobbs. *Id*.

7. In his deposition, Plaintiff testified that he did not intend to execute the 2008 contract. He claims that prior to executing the contract, he wished to discuss concerns that he had with John Martinez. His primary concern was that defendant Freddie Martinez, Sr. had previously exploited the song *No Temas Al Amor* by including it in his father's (Gilbert Martinez) music catalog, even though Gilbert had no ownership interests or rights in the song. Plaintiff further claims that Ms. Hobbs tricked him into signing the contract by telling him to return the last page with his signature solely for the purpose of confirming receipt of the document. After Plaintiff complied with this request, Ms. Hobbs allegedly laughed at him and said he was now legally bound by the agreement. Ms. Hobbs denied these allegations at trial. Trial Tr. 262:18-25.

8. After the contract was executed, Ms. Hobbs mailed to Plaintiff a check in the amount of $3,000 along with a copy of the agreement. *Id*. at 259:12-21. The $3,000 check was drafted by Ms. Hobbs and signed by John Martinez. Pl.'s Ex. 9. Plaintiff never contacted Marfre to complain about the contract. Trial Tr. 271:21-23. Plaintiff testified that he never raised concerns about the agreement because he believed Ms. Hobbs's representation that he was bound by it.

**Terms of the 2008 Contract**

9. Under the contract, Plaintiff conveyed to Marfre, its successors and assigns, "a certain heretofore unpublished original musical composition, written and/or composed by [Plaintiff], now entitled No Temas Al Amor (the "Composition"), including the title, words

and music, all world-wide rights therein and thereto, all registrations with respect thereto, and the exclusive right to secure copyrights." Pl.'s Ex. 4 ¶ 1. Although the contract refers to the composition as unpublished, *No Temas Al Amor* was first published by Freddie Records in 1983. Pl.'s Ex. 12.

10. In exchange for the rights to *No Temas Al Amor*, Plaintiff received $3,000 and fifty percent (50%) of any and all net sums received (i.e., Plaintiff's royalties) by Marfe from exploitation of the composition. Pl.'s Ex. 4 ¶ 3.

11. Ms. Hobbs testified that Plaintiff understood that the $3,000 check was merely an "advance," and that the royalties earned by Plaintiff would be deducted until the $3,000 loan was extinguished. Trial Tr. 267:1-24. She testified that it is customary in the music publishing business to deduct royalties earned from a composer's entire catalog from an advance. *Id*. at 269:12-24. She further explained that "[d]epending on the writer and what I call is their catalog, which is the list of songs that they have with the particular publishing company, if the publishing company has issued the advance, I will deduct it from their entire catalog. In this case being the two songs . . . the sooner that we recoup the advance, the sooner they start getting additional payments." Trial Tr. 269:14-22. Plaintiff's "catalog" with Marfre consisted of two songs: *No Temas Al Amor* and *En Las Alas de un Angel*. *Id*. at 251:18-252:2. Plaintiff's deposition testimony regarding the parties' agreement matches Ms. Hobbs's description. Indeed, Plaintiff referred to the $3,000 check as an advance. Pl.'s Dep: 62:23-63:3.

12. Plaintiff has not received any royalty payments because, according to Defendant, the songs in Plaintiff's catalog have not generated enough royalty income to pay off the alleged $3,000 loan. Trial Tr. 127:21-25.

13. According to Ms. Hobbs, just under 10,000 CDs were sold containing the song *No Temas Al Amor*. Trial Tr. 263:3-7. The song was published by Marfre on two CDs: catalog numbers 3021 and 3047. *Id*. at 8-17. Ms. Hobbs testified that she recently checked the individual sales on Plaintiff's catalog. Trial Tr. 264: 19-23. According to Hobbs, the sales reports reflected that Plaintiff was "unrecouped" as of June 30, 2015. *Id*. at 264-265:24-2. "Unrecouped" means that Plaintiff's royalty earnings have not generated enough credit to pay off the alleged $3,000 advance. *Id*. at 265:3-7. Ms. Hobbs claims that as of the date of trial, Plaintiff was unrecouped for both songs in his catalog, owing Defendant a balance of $180, and that Plaintiff had made $450 in royalties from *No Temas Al Amor* over the past seven years. Trial Tr. 271:1-20. Therefore, Defendant applied $450 in royalties earned from *No Temas Al Amor* and $2,370[2] from royalties earned by *En Las Alas de un Angel* towards the alleged $3,000 advance.

14. However, the 2008 contract does not refer to the $3,000 as an advance or a loan to Plaintiff. Moreover, paragraph 12 of the contract states that the document itself constitutes the entire agreement between Plaintiff and Defendant. Pl.'s Ex. 4 at 6. Additionally, the $3,000 check itself does not denote that it is payment of an advance. Def.'s Ex. 16.

15. On June 22, 2010, Marfre Music Publishing filed a copyright registration claiming rights in and to *No Temas Al Amor* (PA 1-700-403). Def.'s Ex. 8. The registration identifies

---

[2] $3000 - $450 (*No Temas Al Amor* royalties) - $180 (alleged unrecouped amount) = $2,370

Plaintiff as the sole author of the composition's lyrics and music. *Id*. The registration identifies November 23, 1983, as the composition's first date of publication. *Id*.

## II. CONCLUSIONS OF LAW

**Breach of Contract**

16. Plaintiff brings a breach of contract claim against Defendant for alleged unpaid royalties under the 2008 contract. Pl.'s Ex 4. To prove breach of contract under Texas law, the plaintiff must show that (1) there is a valid and enforceable contract; (2) the plaintiff is a proper party to sue for breach of the contract; (3) the plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff's injury. *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197 (Tex. App.– Houston [1st Dist] 2007, no pet.); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.–Corpus Christi 2006, writ denied). "Breach" is the failure, without legal excuse, to perform any promise that forms all or part of an agreement. *Bernal v. Garrison*, 818 S.W.2d 79, 83 (Tex. App.– Corps Christi 1991, writ denied).

17. Central to Plaintiff's breach of contract claim is the parties' dispute over the character of the $3,000 check sent to Plaintiff. Defendant asserts that the $3,000 check was an advance. Although Plaintiff admitted in his deposition that the $3,000 was an advance, he now claims that it was payment for Defendant's previous exploitation of and future right to exploit the song *No Temas Al Amor*.

18. Over the past seven years, Defendant has applied Plaintiff's earned royalties from *No Temas Al Amor* (the song related to the 2008 contract) and *En Las Alas de un Angel* (the

song related to the 1997 contract), toward the $3,000 loan. As of the date of trial, Plaintiff still owed a balance of $180 to Defendant. According to Ms. Hobbs, Defendant applied $450 in royalties earned from *No Temas Al Amor* and $2,370 from royalties earned from *En Las Alas de un Angel* toward repayment of the advance. Although Plaintiff disputes Defendant's treatment of the $3,000 as an advance, Plaintiff did not present any evidence to dispute that these are the correct amount of royalties earned by Plaintiff.

19. However, the 2008 contract does not refer to the $3,000 as an advance or a loan. The contract states: "In consideration of the Agreement herein contained of the sum of Three Thousand ($3,000) Dollars and other good and valuable consideration in hand **paid** by the Publisher to the Composer(s), receipt of which is hereby acknowledged." Pl.'s Ex. 4 at 1 (emphasis added). This paragraph treats the $3,000 as payment for the rights to *No Temas Al Amor*. Neither party alleges, nor does the court find, that this provision is ambiguous. Further, paragraph 12 of the contract states that the document itself constitutes the entire agreement between Plaintiff and Defendant. *Id*. at 6.

20. "The general rule for an unambiguous contract is that evidence of prior or contemporaneous agreements is inadmissible as parol evidence." *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex. 2010) (citing *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam)). However, an exception exists for consistent collateral agreements. *Id*. The parol evidence rule "does not preclude enforcement of prior or contemporaneous agreements which are collateral to an integrated agreement and which are not inconsistent with and do not vary or contradict the express or implied terms or obligations thereof." *Id*. (quoting *Hubacek v. Ennis State Bank*, 159 Tex. 166, 171, 317

S.W.2d 30, 32 (1958)) (internal quotation marks omitted); *see also David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) ("Under the exception, parol evidence can be used to demonstrate a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations.").

21. A collateral agreement between parties concerning the relationship of several distinct obligations between them falls within the exception. *See, e.g.*, *Hubacek,* 159 Tex. at 172, 317 S.W.2d at 33 ("A and B in an integrated contract respectively promise to sell and to buy Blackacre for $3,000.00. A contemporaneous oral agreement between them that the price shall be paid partly by discharge of a judgment which B has against A is operative.").

22. Defendant argues that the parties' agreement to treat the $3,000 as an advance was a "consistent collateral agreement" to the 2008 contract. Dkt. 409 at 8. Defendant points to paragraphs 4 and 16 of the contract to support their argument. Paragraph 4 of the contract discusses the concept of recoupment, and appears to contemplate the possibility of Defendant providing an advance to Plaintiff "under this or any other agreement." Pl.'s Ex. 4 ¶ 4. It states that "[w]ithin 90 days after the last days of June and December in each year, Publisher will prepare and furnish semiannual statements to Composer hereunder, and each such statement shall be accompanied by the payment of any and all sums shown to be due thereby, after deduction of any and all recoupable costs or advances to Composer under this or any other agreement between Composer and Publisher." *Id*. Additionally, paragraph 16 of the 2008 contract provides for recoupment of demonstration recordings. Pl.'s Ex. 4 ¶ 16. However, John Martinez testified that he does not recall any

demonstration recordings of *No Temas Al Amor*. Additionally, Ms. Hobbs testified that she is not aware of promotional costs related to *No Temas Al Amor*. Therefore, the recoupment language in paragraph 14 is inapplicable to Plaintiff's claim for earned royalties.

23. Although paragraph 4 contemplates the possibility of the parties entering into a separate loan agreement, it does not transform the $3,000 payment into a loan. The alleged "collateral agreement" is inconsistent with the terms of the 2008 contact. An agreement to alter the payment terms of a written contract is in conflict with the written contract and is not merely collateral to it. *Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex. 1979) (finding that the parties' simultaneous oral agreement to give purchaser a $5,000 discount on the purchase of real estate did not constitute a consistent collateral agreement because "[a] previous or simultaneous agreement to alter the fee agreed upon in a written contract is in conflict with the written contract and not merely collateral to it"); *see also Rincones v. Windberg*, 705 S.W.2d 846, 849 (Tex. App.–Austin 1986, no writ).

24. Defendant relies on *Swinnea*, where there was undisputed testimony that, as part of a complex buyout agreement consisting of several distinct obligations, the parties orally agreed that party A would continue leasing property from party B for an additional six years. *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 870-71 (Tex. 2010). The Texas Supreme Court held that the parties' oral lease agreement was a "consistent collateral agreement" because it did not contradict the written contracts. *Id.* at 876 (reversing the court of appeals' ruling that testimony offered to show that the lease agreement was intended to be consideration for the buyout agreement was incompetent parol evidence).

25. This case is distinguishable from *Swinnea*. The parties' alleged oral agreement to treat the $3,000 as a loan would require altering the terms of the written contract and changing the entire nature of the contractual relationship. Therefore, Defendant's alleged "collateral agreement" cannot be enforced. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *see also Johnson v. Driver*, 198 S.W.3d 359, 364 (Tex. App.– Tyler 2006, no pet.).

26. Defendant suggests that it is too late for Plaintiff to object to parol evidence because "no objection was raised as to the admission of any evidence of a collateral, consistent agreement." Dkt. 409 at 8. However, Plaintiff did object to Ms. Hobbs's characterization of the payment as an advance, and the court indicated that it would take Plaintff's objection under consideration. Trial Tr. 258:15-17. Regardless, "[t]he parol evidence rule is not a rule of evidence at all, but a rule of substantive law. When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements." *Hubacek,* 159 Tex. at 169 (citations omitted).

27. Accordingly, because the parties' collateral agreement to treat the $3,000 as a loan is inconsistent with the written terms of the 2008 contract, the parol evidenc rule precludes enforcement of this oral agreement.

28. In addition to the $3,000 payment, paragraph 3 of the 2008 contract states that Defendant agrees to pay Plaintiff "50% of all net sums" received from the exploitation of *No Temas Al Amor*. Pl.'s Ex. 4. Hobbs testified that as of the date of trial, Plaintiff had earned $450 in royalties from the song *No Temas Al Amor*. Defendant's failure to pay Plaintiff the $450

in royalties (instead applying them toward the alleged $3,000 loan) constitutes a breach of the 2008 contract.

29. Plaintiff also claims that Defendant failed to timely provide Plaintiff with semiannual accountings, as required under the 2008 contract. However, Plaintiff failed to present any evidence of this alleged breach. Moreover, even if Plaintiff had proved that Defendant failed to provide some or all of the required accountings, there is no evidence that Plaintiff suffered any damages as a result of this alleged breach.

30. Generally, the measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed. *Sarva Gumarska v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App.– Dallas 2004, no pet.). In this case, the extent of Plaintiff's damages is the total amount of unpaid royalties earned from *No Temas Al Amor*. Plaintiff may not recover the unpaid royalties earned from *En Las Alas de un Angel* because they relate to a separate contract (i.e., the 1997 contract). There is no evidence in the record of the amount of Plaintiff's damages for breach of contract other than the testimony of Ms. Hobbs that Plaintiff earned $450 in royalties from *No Temas Al Amor*. Therefore, Plaintiff is entitled to recover $450 from Defendant for breach of the 2008 contract.

**Rescission**

31. "Rescission is an equitable remedy that seeks to set aside an otherwise legal contract due to fraud, mistake, or for some other reason when it is necessary to avoid unjust enrichment of the non-complaining party to the contract, so that the parties thereto may be restored, insofar as is possible, to the status or position they were in prior to execution of the

contract." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 732 (Tex. App.– Fort Worth 2008, pet. dism'd) (citations omitted). "Rescission is thus, an 'undoing' of the contract and generally used as a substitute for monetary damages when such damages would not be adequate." *Id.*.

32. "At common law, rescission also generally requires notice and tender; that is, a plaintiff seeking to rescind a contract must give timely notice to the defendant that the contract is being rescinded and either return or offer to return the property he has received and the value of any benefit he may have derived from its possession." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012) (citing *Texas Emp'rs Ins. Ass'n v. Kennedy*, 135 Tex. 486, 143 S.W.2d 583, 585 (1940); *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 836 (Tex. App.–Dallas 1984, writ ref'd n.r.e.)).

33. Plaintiff sets forth three theories for rescission of the 2008 contract: (1) Plaintiff was fraudulently induced into entering the 2008 contract when Ms. Hobbs represented to Plaintiff that sending a signed copy of the last page of the contract was only to confirm Plaintiff's receipt of the contract; (2) Defendants' exploitation of *No Temas Al Amor* prior to the 2008 contract; and (3) mistake (i.e., that the contract incorrectly refers to the song *No Temas Al Amor* as unpublished). None of these three theories justify rescission of the 2008 contract.

34. First, Plaintiff's fraudulent inducement theory fails because all fraud-based claims have been dismissed. Dkts. 185-191.

35. Second, Plaintiff has not cited any legal authority to support the position that Defendant's alleged improper exploitation of *No Temas Al Amor* prior to execution of the 2008 contract

provides a legal basis for rescission. In any event, this court has already dismissed Plaintiff's copyright infringement claim related to *No Temas Al Amor*. Furthermore, even if the court assumes that Defendants were improperly exploiting the song prior to the contract, this does not justify rescission. Plaintiff testified that prior to executing the 2008 contract, he was aware of the fact that Defendant had previously released the song on other albums. Indeed, Plaintiff's position appears to be that the $3,000 payment was, in part, compensation for Defendant's prior exploitation of the song. Dkt. 410 at 16. Accordingly, because Plaintiff had knowledge of Defendants' alleged improper conduct prior to executing the contract, this theory of rescission fails.

36. Finally, the fact that the contract erroneously refers to *No Temas Al Amor* as an "unpublished composition" does not justify rescission. It is clear from the evidentiary record that there was never any confusion over which song the parties were referring to. This mutual, immaterial drafting error does not justify rescission. *See Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 175 (Tex. App.– Houston [1st Dist.] 2006, no pet.) (finding that equity may permit rescission based on a unilateral mistake when the mistake is of so great a consequence that to enforce the contract would be unconscionable).

37. Therefore, Plaintiff's rescission claim is DISMISSED.

**Attorney's Fees**

38. Chapter 38 of the Texas Civil Practice and Remedies Code allows recovery of attorney's fees in breach of contract cases in addition to the amount of a valid claim. Tex. Civ. Prac. & Rem. Code § 38.001(8) (West 2014). In order to recover fees, a party must: (a) prevail

on the breach of contract claim and (b) recover damages. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009).

39. Because Plaintiff has been awarded damages on his breach of contract claim, Plaintiff is entitled to an award of reasonable and necessary attorney's fees. *NRC, Inc. v. Pickhardt*, 667 S.W.2d 292, 294 (Tex. App.– Texarkana 1984, writ ref'd n.r.e.); *see also Ellis v. Waldorp*, 627 S.W.2d 791 (Tex. App.– Fort Worth 1982, writ ref'd n.r.e.).

**Declaratory Relief**

40. Plaintiff seeks a declaration that he owns the copyright to *No Temas Al Amor*. Marfre obtained a copyright registration to *No Temas Al Amor* in 2010 and maintains copyright ownership to this day. Def.'s Ex. 8. The 2008 contract expressly transfers ownership rights, including copyright to *No Temas Al Amor* to Marfre.

41. Civil actions under the Copyright Act are subject to a three-year statute of limitations. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir.1996) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.") (citing 17 U.S.C. § 507(b)). "A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Id*.

42. Where the gravamen of Plaintiff's claims is ownership of a copyright, unlike copyright-infringement claims, a copyright-ownership claim "accrues only once, and if an action is not brought within three years of accrual, it is forever barred." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007). Ownership claims accrue when "plain and express repudiation" is communicated to the claimant "and are barred three years from the date of repudiation." *Zuill v. Shanahan*, 80 F.3d 1366, 1369

(9th Cir 1996). The clearest example of repudiation of ownership occurs when a defendant "openly, and quite notoriously, sold [plaintiff]'s records without providing payment to him." *Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006).

43. Plaintiff's potential claim for ownership of *No Temas Al Amor* accrued when the parties entered into the contract on May 8, 2008. Plaintiff brought suit on February 28, 2012, well after the three year statute of limitations had passed. Accordingly, and consistent with the rulings of this court regarding the expiration of limitations of ownership accrual claims (Dkts. 312 and 336), Plaintiff's equitable claim for declaratory judgment fails.

44. Plaintiff's claim for declaratory judgment is DISMISSED.

### III. CONCLUSION

For the foregoing reasons, Plaintiff has succeeded on his breach of contract claim. Plaintiff's damages are limited to (1) $450 in royalties owed for the song *No Temas Al Amor* based on the court's interpretation of the 2008 contract; (2) pre-judgment interest at the rate of 0.51% per annum; (3) post-judgment interest at the rate of 0.51% per annum; and (4) the reasonable and necessary attorney's fees incurred in connection with Plaintiff's breach of contract claim. The parties have until end of business day on December 14, 2015 to file a joint statement indicating the appropriate amount of attorney's fees to be awarded Plaintiff based on the court's findings. If the parties are unable to agree, the court will order the parties to file briefs in support of their respective positions. All of Plaintiff's remaining claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on December 1, 2015.

_____
Gray H. Miller
United States District Judge